**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**IN RE:**

| | |
|---|---|
| **SIXTY SIXTY CONDOMINIUM ASSOCIATION, INC.,** | **CASE NO.: 16-26187-RAM** <br> **Chapter 11** |
|     **Debtor-in-Possession.** <br> _____/ | |
| **SIXTY SIXTY CONDOMINIUM ASSOCIATION, INC.,** | Adv. Case No. 17-01171-RAM-BKC |
|     **Plaintiff,** <br> **v.** | |
| **SCHECHER GROUP, INC. D/B/A SG SHARED COMPONENTS** | |
|     **Defendant.** <br> _____/ | |

**DEFENDANT, SCHECHER GROUP, INC. 'S MOTION TO DISMISS COMPLAINT TO DETERMINE VALIDITY, PRIORITY AND EXTENT OF LIENS, SETOFF, OBJECTION TO CLAIM & REQUEST FOR DECLARATORY JUDGMENT AND/OR FOR MORE DEFINITE STATEMENT**

Defendant, **SCHECHER GROUP, INC. D/B/A SG SHARED COMPONENTS** ("Schecher Group" or "Defendant"), by and through counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), (e) and (f), as incorporated by Fed. R. Bankr. P. 7012, files this Defendant, Schecher Group, Inc.'s Motion to Dismiss Complaint To Determine Validity, Priority And Extent Of Liens, Setoff, Objection To Claim & Request For Declaratory Judgment And/Or For More Definite Statement (the "Motion to Dismiss") and states, as follows:

**I.    PROCEDURAL BACKGROUND.**

1.    On December 5, 2016 (the "Petition Date"), the Plaintiff/Debtor, Sixty Sixty Condominium Association, Inc. (the "Plaintiff", "Debtor" or "Association") filed a voluntary petition for relief under Chapter 11 (the "Petition") of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Case")[Bankr. ECF No. 1].

2.       On December 19, 2016, the Debtor filed its Schedules and Statement of Financial Affairs ("SOFA") and related filings (the "Schedules")[Bankr. EFC No. 25]. In Schedule D, the Debtor lists secured debt in the amount of $2,292,750.30, with the Schecher Group as having $497,817.30 (disputed) of secured claims.[1]

3.       On March 17, 2017, the Debtor filed its Disclosure Statement in Support of Plan of Reorganization of Sixty Sixty Condominium Association, Inc. ("Disclosure Statement") [ECF No. 150], together with a Plan of Reorganization of Sixty Sixty Condominium Association, Inc. ("Plan") [Bankr. ECF No. 149].

4.       On April 11, 2017, the Schecher Group filed its secured Proof of Claim, Claim No. 40 (the "Secured POC") in amount of $1,075,516.08, plus accrued interest thereon, attorneys' fees and costs, including any other expenses, charges and special late charges, assessments or special assessments. The Secured POC also included a six (6) page Statement of Claim, together with Exhibit 1 and Composite Exhibit 2, detailing the basis for the Secured POC pursuant to the Declaration and other information establishing the *prima facie* validity of the Shared Costs owed by the Debtor.

5.       On April 25, 2017, the Defendant filed Secured Creditor, Schecher Group, Inc.'s (I) Objection To Disclosure Statement In Support Of Plan Of Reorganization Of Sixty Sixty Condominium Association, Inc. filed by the Debtor, Sixty Sixty Condominium Association, Inc. [Bankr. ECF No. 150] And (II) Request For Dismissal Of Debtor's Chapter 11 Case (the "Objection to Disclosure Statement")[2] [BKC Main Case - ECF No. 218].

6.       On April 14, 2017, the Court entered its Order Setting Deadline for Debtor to File Adversary Proceeding directing the Debtor by April 27, 2017 to "file an adversary proceeding against the Schecher Group, Inc. to determine the amount of the Schecher Group's lien against the commercial units and residential unit owned by the Debtor" (the "Adversary Order") [BKC Main Case - ECF No. 204].

---

[1] The Debtor lists the secured debt owed to Schecher Group, which is broken down as follows: (a) Commercial Restaurant Unit CU-1, $163,494.99; (b) Commercial Terrace Unit CU-2, $143,945.56; (c) Commercial Terrace Unit CU-3, $66,318.75; (d) Commercial Terrace Unit CU-4, $57,853.00; and (e) Residential Unit 505 in Condominium, $66,205.00.

[2] Unless otherwise defined herein, all capitalized terms shall have the same meaning as set forth in the Objection to the Disclosure Statement [Bankr. ECF No. 218] and the Complaint [Adv. ECF No. 1].

7. On April 27, 2017, the Debtor commenced this adversary proceeding by filing an Complaint To Determine Validity, Priority And Extent Of Liens, Setoff, Objection To Claim & Request For Declaratory Judgment (the "Complaint")[Adv. Doc. No. 1] against the Defendant, asserting claims for (i) Count 1: For Declaratory Relief To Determine The Validity Extent And Priority Of Liens, Claims And Encumbrances In Plaintiff's Real Property; (ii) Count 2: Objection To Claim Count; (iii) 3: Improper Setoff; (iv) Count 4: To Avoid Preferential Liens Against Unit 505 And Commercial Units; and (v) Count 5: To Avoid Improperly Perfected Liens Against Commercial Units And Unit 505 (the "Avoidance Claims").

8. On May 3, 2017, the Court entered its Order (1) Setting Hearing and Deadlines on Amended Disclosure Statement (2) Setting Briefing Schedule on Right of First Refusal Issue (3) Sustaining In Part Objection to Disclosure Statement and (4) Continuing Hearings on Application to Employ Manager and Application to Employ Broker and Approve Bid Procedures (the "Order Setting Deadlines") [ECF No. 230].

9. On May 4, 2017, the Court entered its Report To State Court On Pending Matters And Collateral Estoppel Effect of Bankruptcy Court Ruling (the "Report")[Bankr. ECF No. 232] providing, among other things, that:

> "4. The purpose and scope of this Order is the following:
>
> Both the Debtor, as a Unit Owner, and the other Unit Owners who are defendants in the Foreclosure Cases, dispute the Schecher Groups calculation of Shared Costs. To resolve that dispute, the Debtor has filed an adversary proceeding in this bankruptcy case against the Schecher Group, Adv. 17-1171 (the "Shared Costs Adversary"). Among other relief, the adversary complaint seeks a judgment determining the amount of the Shared Costs.
>
> ***
>
> A. To advise the state court that the Shared Costs amount critical to determining the debt owed by each Unit Owner in each of the Foreclosure Cases is an issue that will be determined by this Court in the Shared Costs Adversary;"

10. Generally, the Plaintiff posits the dispute over the amount of Shared Costs owed by Plaintiff to the Defendant, which presumably would then be extrapolated and applied more broadly to the Unit Owners (defendants in the Foreclosure Cases), in ¶77 of the Complaint:

> "77. Accordingly the total costs actually incurred by Schecher and properly within the Scope of HU Assessments constitutes the baseline of all HU Assessments against all RUOs and CUOs (the "Baseline")." (emphasis added).

3

11.     However, in pursuit of what has been dubbed as the "Baseline" number, the Plaintiff has propped-up the Avoidance Claims predicated upon incongruous legal theories, lacking not only factual support in the Complaint, but which exceed the mandates of the Court. Furthermore, the Schecher Group submits that the Defendant has advanced legal conclusions with respect to the interpretation and enforcement of the Declaration under the guise of facts, which fail to meet the pleading requirements necessary to state a cause of action.

12.     Respectfully, the Defendant is cognizant of the Court's efforts to reach a determination of the Baseline number in the context of the Bankruptcy Case and to the extent applicable in the Foreclosure Cases. By way of this Motion, however, the Defendant seeks dismissal of the Complaint and/or requiring the Plaintiff to provide a more definite statement with respect the Avoidance Claims, to narrow the issues being litigated between the parties, and the potential preclusive effect this adversary proceeding may have on the Foreclosure Cases.

## II.     LEGAL ARGUMENT.

### A.     Standard of Review on Motion to Dismiss.

The Defendant seeks dismissal of the Complaint under Rule 12(b)(6) & (e), made applicable here by Fed. R. Bankr. P. 7012, and for a more definite statement. To survive a motion to dismiss under Rule 12(b)(6), a complaint need only contain "a short and plain statement of the claim" that gives "the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). Factual allegations need only "be enough to raise a right to relief above the speculative level[.]" *Id.* at 555; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (explaining that allegations need merely "nudge the claim across the line from conceivable to plausible"). The Court must accept the Complaint's well-pled allegations as true, view them in the light most favorable to Plaintiff, and accept all reasonable inferences in Plaintiff's favor. *Twombly*, 550 U.S. at 554-55; *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1291 (11th Cir. 2007).

Moreover, Rule 8(a) of the Federal Rules of Civil Procedure, as interpreted by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), 129 S. Ct. 1937 (2009) and *Twombly*, 550 U.S. at 570, requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). To survive a motion to dismiss, a plaintiff's allegations need merely

"nudge the claim 'across the line from conceivable to plausible.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570)). Although "threadbare recitals of the elements of a cause of action . . . do not suffice," a claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

       **B.**       **The Secured POC Is Prima Facially Valid.**

The Complaint is riddled with dubious allegations of fault leveled against the Defendant in the management of the Condominium, which Plaintiff contends led to the Lock-Out Period, and that Plaintiff was charged for HU Assessments outside the Scope of HU Assessments. Additionally, a common thread running through the Avoidance Claims is that the Schecher Group is not secured despite the Schedules and filing of the Secured POC. In Counts 1 and 2 of the Complaint, the Plaintiff challenges the validity, priority and extent of the Schecher Groups interest in the Commercial Units and Unit 505, but fails to state a cause of action to object to the Secured POC on the basis that is not *prima facially* valid. Notably, in Count 2 of the Complaint, the Debtor objects to the Secured POC on the grounds that "POC 40 does not comply with Rule 3001 as it fails to provide sufficient documentation to support the alleged amount of the claim; that it appears to be duplicative of other claims (e.g. POC #6 asserted by FB&S); and that POC 40 fails to take into consideration the impact of the $889K Obligation. Under the Bankruptcy Code, a "claim" is defined as a "right to payment." 11 U.S.C. § 101(5)(A).

The record is clear that the Schecher Group has a right to payment, which the Debtor has already acknowledged, having scheduled the Secured POC (POC 40) for nearly $500,000. Whatever the disputed amount may have been as of the Petition Date, the Debtor did not list any part of the Secured POC as either a "90 day preference" or a "transfer made within 1 year before filing this case that benefitted any insider" in the Schedules nor any amendments thereto. See, SOFA, Part 2, Q. 3 & 4 [ECF No. 25].

In analyzing the sufficiency of a proof of claim subject to an objection, this Court in *In re Moreno,* 341 B.R. 813 (S.D. Fla. 2006), ruled that debtors may not file objections to a claim based solely on lack of documentation. In doing so, the Court considered Rule 3001 and Official Form 10 (now Form 410) establishing the criteria for documentation that must be attached to a proof of claim. Although the Form requires the claimant to attach copies of supporting

documents, if the documents are too voluminous, the creditor may attach a summary. *Id.* A proof of claim that meets the above standard along with the others imposed in Rule 3001, "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr.P. 3001(f). A creditor that fails to comply with Rule 3001(c) does not receive the benefit of this prima facie validity, and instead, in response to an objection, must come forward with sufficient evidence of the claim's validity and amount. *Burkett,* 329 B.R. at 827 (citing *In re Stoecker,* 5 F.3d 1022, 1028 (7th Cir.1993)).

Even a cursory review of the Secured POC demonstrates that the Schecher Group complied with requirements of Rule 3001(c) and there are no facts set forth in the Complaint that would lead to a different conclusion. That is, the Secured POC set forth in the amount of the claim, contained a detailed State of Claim, which provided more than sufficient information establishing its right to payment, including a Summary Chart of Pre-Petition Shared Costs Assessments Due From Debtor[3], and copies of the recorded Claims of Lien for each of the Commercial Units (the "<u>Schecher Liens</u>"), which were recorded more than 90 days prior to the Petition Date. The only exception appearing on the face of the Secured POC is the Claim of Lien for Assessments for Unit 505 recorded on November 28, 2016 the ("<u>RU 505 Lien</u>"). There is nothing about the Secured POC that should have drawn an objection from the Debtor other than the amount of claim. As the Court so eloquently put it "[T]he gig is up, however, on debtors taking advantage of the cost of responding to claims objections…which the debtor has acknowledged owing in whole or substantial part." *Id* at 819.

In the Complaint, the Plaintiff alleges that in determining the Baseline, the Schecher Group may only assess and collect HU Assessments for Shared Costs that were "actually" incurred by Defendant. See, Compl. ¶75, 77 [Adv. ECF No. 1]. There is simply no factual support for this statement and each Count of the Complaint is contradicted by the Declaration. First, nowhere in the Declaration does word "actually" appear in the context of HU Assessments. So why is this the standard by which the Defendant must now litigate the Avoidance Claims?

Second, the Schecher Group, like the Association, annually assesses Shared Costs for use of the Shard Components (subject to special assessments from time to time) found within the

---

[3] The Secured POC is subject to amendment by the Schecher Group which will address and clarify, among other things, the "Credits" in the amount of $399,278.34 referenced by the Plaintiff in footnote 17 of the Complaint.

budgets based upon the projection of operational costs and expenses of the Hotel Unit for that fiscal year. This is a common practice for condominium and homeowner associations alike, including the Plaintiff. There is no reason to hold the Schecher Group to a different standard merely because the Plaintiff may disagree with the amount of the HU Assessments. Indeed, the Defendant provided budgets, along with payment coupons and other information to the Plaintiff and RUOs, expressly contemplated by and authorized under the Declaration. Moreover, the Defendant was authorized to establish reserves for HU Assessments in the event any future shortfalls in the budget.

Third, the Plaintiff also alleges that because of the Lock-Out Period, the duty of the Plaintiff to pay HU Assessments was suspended or waived because "the Easements were not provided to the RUOs or the CUO, including the Plaintiff". See, Compl. ¶101 [Adv. ECF No. 1]. This argument is undercut by Section 12.1 of the Declaration, which provides, in part, that:

> "…the Shared Components (including reasonable reserves if established by the Hotel Unit Owner and any assessments payable by the Hotel Unit Owner to the Association, the "Shared Costs") shall be paid for in part through charges (either general or special) imposed against the Residential Units and the Commercial Units in accordance with the terms hereof. <u>No Owner may waive or otherwise escape liability for charges for the Shared Costs by non-use (whether voluntary or involuntary) of the Hotel Unit or abandonment of the right to use same</u>." (emphasis added).

Accordingly, the Complaint must be dismissed to the extent that the Plaintiff relies on any allegations which are in direct conflict with the clear and unambiguous language of the Declaration in prosecuting the Avoidance Claims. That is, the Defendant should not be required to litigate and engage in discovery to address issues that are not subject to dispute as a matter of law. In the end, the Plaintiff is seeking to establish an unsubstantiated precedent for how HU Assessments are charged and collected when the Baseline should be focused on arriving at the "true up" between the parties for what the Plaintiff has called the "circular assessment problem".

### C. The Schecher Group Is Not an Insider of the Debtor.

The bare bone allegations found within the Complaint that the Schecher Group is an "insider" of the Defendant is legally insufficient to support a one (1) year reach back for with respect to the Avoidance Claims. Significantly, in Counts 3, 4 and 5 of the Complaint, the Plaintiff seeks to avoid the Schecher Liens and RU 505 Lien set forth in the Secured POC and recover setoffs (which are not transfers) against the Commercial Units and RU 505 within one

7

year of the Petition Date, as well as during the 90 day preference period. This lien avoidance theory is predicated on the following paragraphs of the Complaint:

> 14. "Presently, the Schecher Group takes the position that … it controls at least twenty-two (22%)(19 ÷ 87 = .218) … of all voting interest of the Unit Owners…" of the Plaintiff. MC ECF #218 at p. 24.
>
> 15. Accordingly, Schecher presently takes the position that it is an affiliate and insider of Plaintiff (the "Insider Allegation"). *See* 11 U.S.C. 101(1)(A)(B) & 101(31).
>
> \*\*\*
>
> 152. Accordingly, Schecher presently takes the position that it is an affiliate and insider of Plaintiff. *See* 11 U.S.C. 101(1)(A)(B) & 101(31).

These allegations, without more, fail to meet the requisite pleading requirements to state a cause of action for the avoidance of the Schecher Liens against property of the estate beyond the 90 day statutory confines of 11 U.S.C. §547 and 553 of the Bankruptcy Code, if applicable, to RU 505. However, as discussed below, no cause of action exists under Count 3 for alleged improper setoffs by the Defendant with respect to the HU Assessments, $889k Obligation and/or the Offset Claim.

As noted above, the Schecher Group filed its Objection to Disclosure Statement [Bankr. ECF No. 230, pg. 4&5] to address, among other things, the Debtor's improper attempt to alter and amend the "voting rights" of the Defendant through the Plan, which the Court ultimately found violated the Declaration. Therein, the Schecher Group stated:

> "Presently, the Schecher Group takes the position that the Hotel Unit, along with the ownership of four (4) additional Residential Units through an affiliate totaling nineteen (19) voting interests, it controls at least twenty-two (22%)(19 ÷ 87 = .218) of the required eighty (80%) and/or $4/5^{th}$ of all voting interests of the Unit Owners, precluding the Debtor from seeking to change the voting rights under Articles 4 & 6 of the Plan. If the Court determines that the correct mathematical computation is based upon a percentage of the total number of votes equal to one-hundred and one (101) (87+14), which is less than 80%, then the Schecher Group asserts that this is a factual matter that needs to be resolved at a later date. Either way, this would not explain the basis for changing any voting rights in the Plan".

Notably, the Schecher Group did not define the term "affiliate," which word has different connotations and meanings unconnected to the definition provided under 11 U.S.C. §101(2) and case law interpreting this section of the Bankruptcy Code. Further, the Defendant made no

8

reference to any particular "entity" or connection, if any, by way of ownership or otherwise, that the Schecher Group was either an affiliate or "insider" of the Debtor. Perhaps not artfully explained, the emphasis of this argument was that the Schecher Group would likely have a sufficient number of votes, when considering the votes of other Unit owners, to reach the 20% mark to preclude amendments to the Declaration.

For purposes of the Bankruptcy Code, the term "affiliate" is defined in 11 U.S.C. §101(2)(A) and (B)[4] to mean a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, (or) ... controlled ... by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor...". The Bankruptcy Code also contains a list of entities deemed to be "insiders" of a debtor, including an "affiliate, or insider of an affiliate as if such affiliate were the debtor." See, 11 U.S.C. §101(31). Further, the Defendant questions whether under the definition of an affiliate, the Plaintiff as a not for profit condominium association under Florida law even falls within these definitions, since its members were not issued "voting securities". Instead, the Defendant, as well as other RUOs, are merely members of the Association with the right to vote their interests in the Units. But, there are courts which have found that the reference to "voting securities" in §101(2)(B) does not exclude non-profit corporations from the definition. See, *In re Locke Mill Partners*, 178 B.R. 697 (M.D.N.C. 1995).

Nevertheless, the Defendant argues that the allegations relied upon by Plaintiff to establish that the Defendant was an insider of the Debtor as of the Petition Date is lacking where, as here, the above cited paragraphs of the Complaint are nothing more than innuendo which are not sufficient to support any necessary component of the Avoidance Claims. *In re D.I.T., Inc.*, 561 B.R. 793 (S.D. Fla. 2016). The allegations set forth in paragraphs 9-13 of the Complaint also fail to cure these pleading deficiencies since there are no allegations that the Schecher Group has any ownership interest in or control over any other Unit owner nor that such entity has an ownership interest in the Defendant. Moreover, the Plaintiff has failed to plead any facts demonstrating the the Defendant has a sufficiently close relationship with and control of the Debtor as of the Petition Date. *In re Broadstripe, LLC*, 444 B.R. 51 (D. Del. 2010); *In re*

---

[4] Through the Complaint, the Plaintiff erroneously cites to 11 U.S.C. §101(1) which applies to the definition of "accountant".

*Ingleside Associates,* 136 B.R. 955 (Bankr.E.D.Pa.1992).

To the contrary, apart from the HU Assessments and the Schecher Group's ownership of the Shared Components, the Defendant has operated independently of the Plaintiff for many years, and the Complaint illuminates the lack of control by the parties to enforce their respective assessments against each other and Unit owners.  Accordingly, the Complaint must be dismissed to the extent that the Avoidance Claims are engrained in the concept that the Plaintiff can challenge and avoid as a preference under 11 U.S.C. §547 during the "90 day and one year preference periods" the amount of the Secured POC, including the validity, priority and extent of the Schecher Liens and RU 505 Liens, in the Commercial Units and RU 505.

### D.    Setoffs Under Section 553 Are Not Subject to Avoidance by Plaintiff.

As set forth in Count 3 of the Complaint, the Plaintiff seeks to avoid and recover "improper setoffs" under as a preference under 11 U.S.C. §547 and 553, or as a post-petition transfer under 11 U.S.C. §549 of the Bankruptcy Code. While the Complaint also intimates violations of "Section 362" for setoffs of the HU Assessments this threat is nonsensical for many reasons not worth mentioning here. Sorting through the "hodge podge" of theories for the recovery for setoffs, such Avoidance Claims are not transfers subject to avoidance by Plaintiff.

Generally, the right of setoff is raised as a defense to a preference action and other claims under the Bankruptcy Code. Section 553 of the Bankruptcy Code recognizes and preserves creditors' rights of setoff under applicable non-bankruptcy law. 11 U.S.C. §553(a); *In re Jet Florida System, Inc.*, 59 B.R. 886 (S.D. Fla. 1986). "Raising setoff as a defense is consistent with the rules of federal procedure. *See Super Stop Petrol., Inc. v. Clark Retail Enters., Inc. (In re Clark Retail Enters., Inc.)*, 308 B.R. 869, 896 (Bankr. N.D. Ill. 2004) (citing *Hanna v. Plumer,* 380 U.S. 460, 471 (1965)). First, it is important to understand that "[t]he term setoff is not defined in the Bankruptcy Code."  *See e.g., Mottaz v. St. Louis Post-Dispatch Pulitzer Publ'g Co. (In re Murphy),* 203 B.R. 972, 975 (Bankr. S.D. Ill. 1997). Instead, the "right" of setoff is preserved by Section 553 of the Bankruptcy Code, which provides that, subject to certain exceptions, the Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case…"  11 U.S.C. § 553(a); *Cairns Assocs., Inc. v. Conopco, Inc., (In re Cairns & Assocs.,*

10

*Inc.),* 372 B.R. 637 (Bankr. S.D.N.Y. 2007). Setoffs are by their very nature "preferences" that are sanctioned by the Bankruptcy Code, meaning that they are not avoidable by the debtor in the traditional sense of a Chapter 5 avoidance action under the Bankruptcy Code. *See Crawford v. Dep't of Treasury (In re Crawford),* 2001 WL 1136919 (Bankr. W.D. Wis. July 23, 2001). However, certain setoffs are recoverable to the extent that they occur within 90 days prior to the filing of the bankruptcy petition. Such exception is not present here since the Defendant has not setoff any Association Assessments against the HU Assessments to arrive at the Baseline.

However, subject to exceptions neither plead by Plaintiff nor applicable to the Complaint, §553 also permits a trustee—to recover from the creditor any amount offset within ninety (90) days immediately preceding the date of the bankruptcy filing *to a defined extent.* 11 U.S.C. §553(b). *In re Damas*, 504 B.R. 209 (D. Mass. 2014). Specifically, the trustee may recover the amount so offset "to the extent that any "insufficiency" on the date of such setoff is less than the insufficiency on the later of (A) 90 days before the date of the filing of the petition; and (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency." 11 U.S.C. § 553(b)(1). For purposes of this subsection, 'insufficiency' means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim." 11 U.S.C. § 553(b)(2). Accordingly, a trustee may recover a setoff under 11 U.S.C. § 553(b)(1) to the extent that the creditor improved its position within the ninety-day period preceding the debtor's bankruptcy petition.

Here, the Plaintiff has plead no set of facts which implicate Defendant's right of setoff under applicable state law and any source of recovery under Section 553 for the simple reason that the Offset Claim makes clear that no credits between the parties have given for the HU Assessments and the $889k Obligation. In addition, any question of "Credits" that may be reflected in the Secured POC, are not setoffs of the Plaintiffs debts due for HU Assessments to the Defendant nor the Association Assessments purportedly due from Defendant to Plaintiff. Besides, the Avoidance Claims for any setoffs are based "Upon information and belief" not any accounting methodologies for the "circular assessments" encountered by the Plaintiff for the Commercial Units and RU 505. Moreover, the Plaintiff has not nor can allege that any debt allegedly owed by the Schecher Group to the Debtor was, in fact, incurred "for the purpose of obtaining a right of setoff against the debtor," since the Association Assessments and HU

11

Assessments and are recurring debts which the Plaintiff alleges are due irrespective of the other. See, 11 U.S.C. §553(a)(3)(C).

Certainly, Section 547(b) permits the avoidance of certain "transfers," 11 U.S.C. §547(b) ("the trustee may avoid any transfer of an interest of the debtor in property...."), and only "transfers." *Id.* Again, the *Damas* decision is instructive on this issue. For purposes of §547 and title 11 in general, "transfer" is defined at 11 U.S.C. § 101(54). The definition, though broad in scope, does not expressly include setoff; and, as explained in *Braunstein v. Branch Group, Inc. (In re Massachusetts Gas & Electric Light Supply Co., Inc.),* 200 B.R. 471, 473 (Bankr.D.Mass.1996) (setoff is excluded from definition of transfer and therefore not subject to avoidance under 11 U.S.C. § 549), the legislative history shows that Congress considered the question and expressly elected to exclude setoff from the meaning of transfer. Accordingly, it is well-settled that setoffs are not transfers and therefore are not avoidable under 11 U.S.C. § 547(b). *Id.; In re Comer,* 386 B.R. 607, 608–609 (Bankr.W.D.Va.2008); *In re Holyoke Nursing Home Inc.,* 273 B.R. 305, 309–10 (Bankr.D.Mass.2002) (offsets are not transfers avoidable under § 547(b)); *Belford v. Union Trust Company (In re Wild Bills, Inc.),* 206 B.R. 8, 12–13 (Bankr.D.Conn.1997) (setoffs are not subject to avoidance under § 547(b); recovery of a valid setoff is governed exclusively by § 553(b)); *see also Lee v. Schweiker,* 739 F.2d 870, 873 n. 4 (3d Cir.1984) (where a setoff right is being asserted, § 553, rather than § 547, governs).

This overriding principal on the limitations of recovering a setoff as an avoidable transfer is problematic for the Plaintiff. If the Court determines that a setoff took place resulting in an insufficiency it would contemporaneously be finding that there was not a transfer of property, thus requiring dismissal of Count 3 of the Complaint to the extent that Plaintiff is seeking to avoid such transfers as preferences either within the 90 day or 1 year preference period and for any post-petition periods. However, "[w]ith respect to the Bankruptcy Code's goals and objectives, given the inherent premium on notions of equity, "the right of set off…allows entities that owe each other to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A." *Citizens Bank of Maryland v. Strumpf,* 116 S. Ct. 286 (1995). Notwithstanding this, this Court should dismiss the Complaint, or alternatively, require the Plaintiff to provide a more definite on narrow issue of determining the Baseline.

### E.  The FDCPA and §718.116 Does Not Apply to Defendant.

Turning now to Count 5 of the Complaint - paragraphs 119 through 131 - the Plaintiff has failed to state a cause of action for the avoidance of the Schecher Liens and RU 505 Lien for alleged violations of the Fair Debt Collection Practices Act (FDCPA) and Florida Statute 718.116 as barring the enforceability and perfection of these liens pursuant to the trustee's avoidance powers of hypothetical lien creditor. 11 U.S.C. §544 and 1107. However, the relief requested by the Plaintiff lacks merit necessitating dismissal of the Complaint. As an initial matter, it should be noted that as stated in the Objection to Disclosure Statement, the Condominium is a commercial condominium not a residential or mixed-use condominium. [BKC Main Case - ECF No. 218, pgs. 11-13].

As to the FDCPA: The FDCPA does not apply to the debt evidenced by the Secured POC as between the debtor Association and the Schecher Group. The FDCPA validation provision, 15 USC 1692g applies to consumer debts only, which provides:

> "Within five days after the initial communication with a **consumer** in connection with the collection of any **debt**, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice…"

15 USC 1692g (a). (emphasis added).

The definition provided in the FDCPA as to a consumer does not include a corporation such as a Plaintiff – commercial condominium association. Rather, a consumer is defined in 15 USC 1692a(3) as: "any *natural* person obligated or allegedly obligated to pay any debt." Clearly, the Association is not a natural person. Moreover, a debt is defined in 15 USC 1692a(5) as:

> "[A]ny obligation or alleged obligation of a **consumer** to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

Clearly, as the Plaintiff is not a consumer within the definitions of the FDCPA, the Avoidance Claims cannot be subject to FDCPA and thus, the Schecher Group is not subject to the above-cited validation provision 15 USC 1692g of the FDCPA as to the Association. For this reason alone, the Complaint must be dismissed since the allegations regarding the FDCPA simply do not apply to the instant dispute.

Additionally, the case law weighs overwhelmingly against a defendant raising violation of the FDCPA as a defense to failure to pay the underlying debt. See *Balsly v. West Mich. Debt Collections, Inc.*, No. 3:11cv642–DJN, 2012 WL 628490, at *12 (E.D.Va. Feb. 27, 2012) (mem.) ("Pursuant to the FDCPA, [the alleged debtor] has a right to pursue his claim regardless of whether he is found liable on the debt ...—the two rights are not coterminous."); *United States v. Iwanski*, 805 F.Supp.2d 1355, 1359 (S.D.Fla.2011) ("[A] violation of th[e FDCPA] does not relieve Defendant of his obligation to pay the underlying debt."); *Vitullo v. Mancini*, 684 F.Supp.2d 760, 765 (E.D.Va.2010) (mem.) ("Nothing in the FDCPA suggests, explicitly or implicitly, that debtors might seek declaratory judgments cancelling or extinguishing accrued debts, in lieu of damages, for FDCPA violations ...."); see also *Schroyer v. Frankel*, 197 F.3d 1170, 1178 (6th Cir.1999); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998); *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir.1992). Should the Plaintiff persist with asserting a claim for an FDCPA violation, it could raise a separate claim seeking damages in another forum, but the FDCPA claim does not bar or render the Schecher Liens and RU 505 Lien unenforceable under the facts of the Complaint or support the avoidance of such liens pursuant to any provision of the Bankruptcy Code, let alone the provisions of Section 544.

Furthermore, the Plaintiff fails to plead any facts which supports a violation of Florida Statute §718.116 to avoid and render the Schecher Liens and RU 505 Lien unenforceable. Significantly, §718.116 governs condominium association liens and nothing more. Indisputably, that Schecher Group is not a condominium association. In fact, Schecher Group is merely a Unit owner within the Debtor condominium association but, due to owning the Hotel Unit, it has specific lien rights independent of those of the Association as provided for in the Declaration.

Although the Complaint omits the salient language of this statutory scheme, a careful review of Florida Statutes Chapter 718, including the definitions in F.S. §718.103 makes it clear that the assessment statute, F.S. §718.116 only applies to Association assessments.

For example, F.S. 718.116(1)(a) provides:

> "A unit owner, regardless of how his or her title has been acquired, including by purchase at a foreclosure sale or by deed in lieu of foreclosure, is liable for all **assessments** which come due while he or she is the unit owner."
> (emphasis added).

In addition, F.S. §718.103(a)(1) defines assessment as meaning "a share of the funds which are required for the payment of common expenses, which from time to time is assessed against the unit owner" while F.S. §718.103(a)(9) defines common expenses as: all expenses properly incurred by the association in the performance of its duties, including expenses specified in s. 718.115. The Debtor seeks to avoid the Schecher Liens as defective because it fails to comply with the requirements of Florida Statute §718.116(5)(b).

However, based upon the clear unambiguous language of Florida Statute §718.116(5)(b), that section, as well as Florida Statute §718.116(5)(a) and Florida Statute §718.116(5)(c) apply to Association liens for association assessments, rather than a lien for a non-Association assessment. Florida Statute §718.116(5) with emphasis added, is below:

> "(5)(a)   The **association** has a lien on each condominium parcel to secure the payment of **assessments**. Except as otherwise provided in subsection (1) and as set forth below, the lien is effective from and shall relate back to the recording of the original declaration of condominium[5], or, in the case of lien on a parcel located in a phase condominium, the last to occur of the recording of the original declaration or amendment thereto creating the parcel. However, as to first mortgages of record, the lien is effective from and after recording of a claim of lien in the public records of the county in which the condominium parcel is located. Nothing in this subsection shall be construed to bestow upon any lien, mortgage, or certified judgment of record on April 1, 1992, including the lien for unpaid assessments created herein, a priority which, by law, the lien, mortgage, or judgment did not have before that date.
>
> (b)   To be valid, a claim of lien must state the description of the condominium parcel, the name of the record owner, the name and address of the association, the amount due, and the due dates. **It must be executed and acknowledged by an officer or authorized agent of the association**. The lien is not effective 1 year after the claim of lien was recorded unless, within that time, an action to enforce the lien is commenced. The 1-year period is automatically extended for any length of time during which the **association** is prevented from filing a foreclosure action by an automatic stay resulting from a bankruptcy petition filed by the parcel owner or any other person claiming an interest in the parcel. The claim of lien secures all unpaid **assessments** that are due and that may accrue after the claim of lien is recorded and through the entry of a final judgment, as well as interest, administrative late fees, and **all reasonable costs and attorney fees incurred by the association incident to the collection**

---

[5] The Debtor Association improperly claims that F.S. §718.116 applies to Schecher's lien and therefore non-compliance with the statute would nullify the lien.

**process**. Upon payment in full, the person making the payment is entitled to a satisfaction of the lien.

        (c)  By recording a notice in substantially the following form, a unit owner or the unit owner's agent or attorney may require the **association** to enforce a recorded claim of lien against his or her condominium parcel…"

Similarly, Florida Statute §718.116(6) has no application to the Schecher liens. That statute (with emphasis added) provides:

    "(6)(a)  The **association** may bring an action in its name to foreclose a lien for assessments in the manner a mortgage of real property is foreclosed and may also bring an action to recover a money judgment for the unpaid assessments without waiving any claim of lien. The association is entitled to recover its reasonable attorney's fees incurred in either a lien foreclosure action or an action to recover a money judgment for unpaid assessments.

    (b)  No foreclosure judgment may be entered until at least 30 days after **the association gives written notice** to the unit owner of its intention to foreclose its lien to collect the unpaid assessments. The notice must be in substantially the following form…"

Clearly, the aforementioned statute applies only to Association liens and has a specific requirement when the Plaintiff must give notice. There is nothing in the statute that requires the same of a non-association lien and non-association lienholder.

Likewise, Florida Statute §718.112, as cited by Debtor, has no application to the Schecher liens, as it is another section devoted to Association liens. The applicable section, with emphasis added, F.S. §718.112(2)(g) provides:

    (g)  Assessments.—The manner of collecting from the unit owners their shares of the **common expenses** shall be stated in the bylaws. **Assessments** shall be made against units not less frequently than quarterly in an amount which is not less than that required to provide funds in advance for payment of all of the anticipated current operating expenses and for all of the unpaid operating expenses previously incurred. Nothing in this paragraph shall preclude the right of an **association** to accelerate assessments of an owner delinquent in payment of common expenses. Accelerated assessments shall be due and payable on the date the claim of lien is filed. Such accelerated assessments shall include the amounts due for the remainder of the budget year in which the claim of lien was filed.

The aforementioned provision refers to assessments as defined in Chapter 718, to pay shares of "common expenses" and further discusses the right of the Association to accelerate assessments. Thus, the allegations of the Complaint regarding this statute do not support any the Avoidance Claims against the Schecher Group.

Lastly, the Plaintiff has requested the recovery of its attorney's fees and costs as part of its relief within the Complaint. The recovery of attorney's fees and costs is warranted only by statute or contract under applicable Florida law. The Plaintiff has failed to allege any facts nor provide any legal basis for the recovery of attorney's fees and costs. Accordingly, for all of the reasons set forth in this Motion to Dismiss, the Schecher Group should not be required to file an answer at this stage of the proceedings to these legally insufficient allegations. Accordingly, consistent with Rule 12(b)(6) & (e) and (f), Fed.R.Civ.P., the Court should strike all immaterial and impertinent matter from the Complaint and enter an order dismissing the Complaint and/or for more definite statement.

### III.   RELIEF REQUESTED.

**WHEREFORE**, the Defendant, Schecher Group, Inc., respectfully request that the Court enter an Order (i) granting the Motion to Dismiss; (ii) striking any immaterial and impertinent material from the Complaint; (iii) awarding Schecher Group its costs in defending this action; and (iv) granting such other and further relief as the Court deems just and appropriate.

**Respectfully submitted this   9th   day of June, 2017.**

        **GENOVESE, JOBLOVE & BATTISTA, P.A.**
*Attorneys for Defendant, Schecher Group, Inc.*
100 S.E. 2nd Street, Suite 4400
Miami, FL 33131
Tel: (305) 349-2300
Fax: (305) 349-2310

By:   /s/ Barry P. Gruher
    Barry P. Gruher, Esq.
    Fla. Bar No. 960993
    Email: bgruher@gjb-law.com

**BECKER & POLIAKOFF, P.A.**
*Attorneys for Defendant, Schecher Group, Inc.*
121 Alhambra Plaza, 10th Floor
Coral Gables, FL  33134

                                            (305) 262-4433 Telephone
                                            E-mail: Sdavis@bplegal.com

By: _____
Steven M. Davis
Florida Bar # 894249

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was served via CM/ECF Notification to all parties on the attached service list on this  9th  day of June, 2017.

                                      By:  /s/ Barry P. Gruher
                                           Barry P. Gruher, Esq.
                                           Fla. Bar No. 960993
                                           Email: bgruher@gjb-law.com

## SERVICE LIST

**Served Via CM/ECF Notification**

David Marshall Brown on behalf of Creditor Collective Unit Owners
DavidBrownfll@gmail.com

Barry P Gruher on behalf of Defendant Schecher Group, Inc.
bgruher@gjb-law.com, vlambdin@gjb-law.com;gjbecf@gjb-law.com;cesser@gjb-law.com;chopkins@gjb-law.com

Brett D Lieberman on behalf of Plaintiff Sixty Sixty Condominium Association, Inc.
blieberman@messana-law.com, emair@messana-law.com;nbarrus@messana-law.com;tmessana@messana-law.com;tzeichman@messana-law.com;thurley@messana-law.com;mwslawfirm@gmail.com