IN THE UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF
FLORIDA

MIAMI-DADE DIVISION

In re:

Sixty Sixty Condominium Association, Inc.,

Debtor.                                                    Case No. 16-26187- RAM

Chapter 11

_____/

In re: Sixty Sixty Condominium Association, Inc.

Plaintiff,

v.                                                    Adv. Pro Case No. 17-01171-RAM

Schecher Group, Inc. D/B/A SG Shared Components,

Defendants.

_____/

## MOTION TO INTERVENE

COME NOW Interested Parties, numerous Unit Owners, ("Unit Owners"), (1)

Ruben Lamothe Unit 503, (2) Miguel & Zulema Fava Unit 507, (3) Loremar Corp Unit

602, (4) David Georg Unit 605, (5) Viel and Improtadora Interwheels SA Unit 606, (6)

Jean Franois Filion Unit 701, (7) Richard and Alisa Monsees Unit 702, (8) Ivan Mahana

Unit 707, (9) Elssitta LLC Unit 708,(10)  Gerard and Laura Mafale Unit 801, (11)

Numero 991, LLC Unit 802, (12) Rodrigo & Maria Velez Family Trust Unit 803, (13)

Ceciillia Zsilavi and Pablo Carlos Mayaud-Maisonneuve Unit 807, (14) (15) and (16)

Ralf Bauchrowitz and Frank Jordon Unit 902, 1001 and 1203, (17) Maria T. Velez Unit

903, (18) Louis Armando Lancheros and Roseli Velezquez, Unit 904 (19) International Consulting Corp. Flavia and Franklin Campero Unit 908, (20) Roman Luis Malagon Unit 1002, (21) Lydia Apodaca Unit 1003, (22) Maria N. Schoentag Unit 1005, (23) Mialio LLC Unit 1006, (24) Villita LLC Unit 1007, (25) BambaMiami Inc. Unit 1008, (26) Jose Valera and Elyam Munoz Unit 1101, (27) Elaine Robinson and Pariano LLC Unit 1103, (28) Elsa Depablos Bermudez Unit 1104, (29) Dominique Sauvetre Unit 1105, (30) Vintage Classics LLC and Puig and Nora Diaz Unit 1108, (31) Valentin Investment LLC Unit 1202, (32) Alicia M. Ortega Unit 1204, (33) Hugo Pedriel and Caroline Hogner Unit 1206, (34) Niklas Albinsson-Collander Unit 1207, (35) Henry Kwiatkowski Unit 1401, (36) LC Geraci LLC Unit 1403, (37) Alfer Investment Corp Unit 1405,(38) Aspire Higher Inc. Unit 1407, (39) Boston RV Corp. Unit 1408, (40) Dagraju LLC and Nester Bujaldon Unit 1501, (41) Alexandre Lombardo Unit 1508 [hereinafter "Unit Owners"], by and through their undersigned counsel and, pursuant to Fed. R. Civ. P. 24(a)(2) and (b)(1)(B) hereby move to intervene in the above-referenced adversary proceeding, and for cause allege:

1.   This Adversary Proceeding arises out of a Main Bankruptcy Case, Case No. 16-26187-RAM, now pending in the United States Bankruptcy for the Southern District of Florida and essentially involves a dispute over condominium assessments and pass through costs which must ultimately be determined by this Court;

2.   Unit Owners are subject to the same exact "shared costs" as the Debtor and are seeking the same determination as the Debtor as to their liability toward these debts to Schecher Group, Inc.;

3.     Unit Owners are seeking to sell their properties, along with the Debtor, in the form of a "bulk sale", because it is believed that a the "bulk sale" of the majority of the properties pursuant to an "arms length" negotiated transaction would bring in more value to the Debtor and the Unit Owners;

4.     Unit Owners are seeking to intervene in the Adversary and have this Court determine the "shared Costs" and the other liabilities that the Association will pass through to the Unit Owners, including Florida Building & Supply, Inc., primarily because they have a vested interest in the outcome of this adversary;

WHEREFORE Unit Owners respectfully move forth entry of an Order Granting their right to Intervene, and for whatever further relief this Honorable Court deems just and proper.

Respectfully Submitted this 13th day of July, 2017

**Florida Litigation Group, P.A.**
4839 Volunteer Road #514
Davie, FL  33330
Telephone: (954) 394-7461
*Counsel for the Unit Owners*

By: /s/  Inger Garcia, Esq.
Inger Garcia, Esq.
Florida Bar Number 0106917
ServiceEmail: Attorney@IngerGarcia.com

DAVID MARSHALL BROWN, P.A.
*Co-Counsel for Unit Owners*

413 S.W. 5th Street

Fort Lauderdale, Florida  33315

(954) 770-3729

DavidBrownFLL@gmail.com

By: /s    David Marshall Brown

David Marshall Brown, Esq.

Florida Bar No. 0995649

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

Sixty Sixty Condominium Association, Inc.               Case No. 16-26187-RAM
    Debtor-in-Possession.                                Chapter 11

_____/

In re:

Sixty Sixty Condominium Association, Inc.               Adv. Pro Case No. 17-01171-RAM

    Plaintiff.

v.

Schecher Group, Inc. D/B/A
SG Shared Components

_____/

## COMPLAINT TO DETERMINE VALIDITY, PRIORITY AND EXTENT OF LIENS, SETOFF, OBJECTION TO CLAIM & REQUEST FOR DECLARATORY JUDGMENT

COMES NOW Interested Parties, numerous Unit Owners, ("Unit Owners"), (1) Ruben Lamothe Unit 503, (2) Miguel & Zulema Fava Unit 507, (3) Loremar Corp Unit 602, (4) David Georg Unit 605, (5) Viel and Improtadora Interwheels SA Unit 606, (6) Jean Franois Filion Unit 701, (7) Richard and Alisa Monsees Unit 702, (8) Ivan Mahana Unit 707, (9) Elssitta LLC Unit 708,(10)  Gerard and Laura Mafale Unit 801, (11) Numero 991, LLC Unit 802, (12) Rodrigo & Maria Velez Family Trust Unit 803, (13) Ceciillia Zsilavi and Pablo Carlos Mayaud-Maisonneuve Unit 807, (14) (15) and (16) Ralf Bauchrowitz and Frank Jordon Unit 902, 1001 and 1203, (17) Maria T. Velez Unit 903,  (18) Louis Armando Lancheros and Roseli Velezquez, Unit 904   (19) International Consulting Corp. Flavia and Franklin Campero Unit 908, (20) Roman Luis Malagon Unit 1002, (21) Lydia Apodaca Unit 1003, (22) Maria N. Schoentag Unit 1005, (23) Mialio LLC Unit 1006, (24) Villita LLC Unit 1007, (25) BambaMiami Inc. Unit 1008, (26) Jose Valera and Elyam Munoz Unit 1101, (27) Elaine Robinson and Pariano LLC Unit 1103, (28) Elsa Depablos Bermudez Unit 1104, (29) Dominique Sauvetre Unit 1105, (30)

EXHIBIT "A"

Vintage Classics LLC and Puig and Nora Diaz Unit 1108, (31) Valentin Investment LLC Unit 1202, (32) Alicia M. Ortega Unit 1204, (33) Hugo Pedriel and Caroline Hogner Unit 1206, (34) Niklas Albinsson-Collander Unit 1207, (35) Henry Kwiatkowski Unit 1401, (36) LC Geraci LLC Unit 1403, (37) Alfer Investment Corp Unit 1405,(38) Aspire Higher Inc. Unit 1407, (39) Boston RV Corp. Unit 1408, (40) Dagraju LLC and Nester Bujaldon Unit 1501, (41) Alexandre Lombardo Unit 1508, joining the Chapter 11 debtor and debtor-in-possession herein (the "Plaintiff"), and alleges as follows:

## JURISDICTION

1.  On December 5, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code commencing the above captioned main bankruptcy case (the "Main Case" or "MC"). (MC ECF #1).

2.  This adversary proceeding is brought pursuant to 11 U.S.C. §§506, 544, 553, and 547 and Federal Rules of Bankruptcy Procedure 3007 and 7001.

3.  On April 14, 2017, this Court entered its *Order Setting Deadline For Debtor to File Adversary Proceeding* (MC ECF #204), requiring that "by April 27, 2017, the Debtor shall file an adversary proceeding against the Schecher Group, Inc. to determine the amount of the Schecher Group's lien against the commercial units and residential unit owned by the Debtor."1

4.  This adversary proceeding is timely filed.

5.  This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§151, 157 and 1334(b). Venue is proper pursuant to 28 U.S.C. §1409.

6.  This adversary proceeding is a core proceeding as defined at 28 U.S.C. §157(b)(2)(B), (b)(2)(F) and (b)(2)(K) in that it is an action to determine the nature, extent and

---

1 Plaintiff holds other claims against Schecher Group, Inc. potentially sounding in contract, tort, statute and/or other basis not asserted herein and are hereby preserved in their entirety. MC ECF#25 at ¶74.

validity of a lien on property, to avoid a liens perfected during the preference period improperly perfected liens, and the allowance or disallowance of a claim.

7.      The Plaintiff is a not-for-profit Florida corporation; a condominium association for a condominium located at 6060 Indian Creek Drive in Miami Beach, Florida (the "Condominium").

8.      The Plaintiff is a condominium association entitled to serve as the lawful representative of each and every unit owner of the Condominium pursuant to Florida Statutes §718.111(3).

9.      The Defendant, Schecher Group, Inc. ("Schecher") is a for-profit Florida corporation with an address of 120 Piper Blvd., Port Orange, FL 32128.

10.     Richard J. Schecher, Sr. is the CEO of Schecher ("RJS").

11.     Schecher does business in the State of Florida, in Miami-Dade County.

12.     Schecher now claims to be a creditor of the Plaintiff.

## GENERAL ALLEGATIONS

13.     On or about April 10, 2006, the Condominium was officially created by recording the *Declaration of Sixty Sixty Condominium* in the Official Records Book 24411, Page 1780 of the Public Records of Miami-Dade County, Florida (the "Declaration"). (MC ECF #138).

14.     The Condominium is composed of 87 "units", which includes: (i) 82 residential units (the "Residential Units") that are privately owned by the Residential Unit owners (the "RUOs");2 (ii) four commercial units (the "Commercial Units")3 presently owned by the Plaintiff (in this capacity, the "CUO"), and, (iii) generally speaking, all areas not within a

---

2 The Plaintiff owns Residential Unit 505 ("Unit 505").
3 The Commercial Units are comprised of units "CU-1", "CU-2", "CU-3" and "CU-4").

Residential Unit or Commercial Unit are deemed to be a part of the hotel unit ("HU") owned and operated by Schecher.

15.     The Plaintiff owns the Commercial Units and Unit 505. The intervenor numerous Unit Owners own most of the other 87 units in the building.

16.     Schecher acquired its interest in the HU by special warranty deed dated March 20, 2013.

17.     On March 20, 2013, Plaintiff entered into: (i) a *Condominium Management Agreement* with Schecher's affiliate, Condominium Hotel Management Corporation, Inc. ("CHMC") to manage Plaintiff.

18.     RJS is the Director of CHMC.

19.     Also on March 2013, Plaintiff entered into an addendum to a certain *Operations Agreement4* with CHMC through which Schecher agreed to be bound by the Operations Agreement.

20.     According to CHMC, CHMC managed Plaintiff for approximately three years, "from March 20, 2013 through the end of 2015" (the "CHMC Management Period"). MC ECF #33 ¶1.

21.     According to CHMC, "CHMC's provision of management services to [Plaintiff] was ancillary to services provided to Schecher Group, as Hotel Unit Owner. Such ancillary services were provided at no charge to [Plaintiff]." MC ECF #33 ¶2.

22.     According to CHMC, "[b]illing and invoices related to [Plaintiff] are in the possession of Schecher Group." MC ECF #33 ¶2.

### *The Insurance Proceeds Issue*

---

4 As defined in MC ECF #12.

23.     In June of 2014, while CHMC was managing the Plaintiff and Schecher, a Residential Unit on the 9th floor under CHMC's stewardship had a significant plumbing issue.

24.     The plumbing issue caused material water damage to Residential Units and Shared Components on floors 5-9 of the Condominium (the "Flood Event").

25.     As a result of the Flood Event and CHMC's and Schecher's failure to timely remedy same, the Fire Marshall issued a Cease & Desist Order on August 21, 2014.

26.     The Cease & Desist Order required evacuation of all Residential Units on floors 5, 6, 7, 8, and 9 through the end of October 2014. A 24 hour Fire Marshall watch was imposed by the City of Miami Beach.

27.     After October 2014, the majority of the units on the floors affected by the Flood Event re-opened.

28.     As of this Complaint, approximately ten units remain closed due to the damage.

29.     Upon information and belief, insurance has paid the HUO and/or its contractors, directly or indirectly, approximately **$760,056** in connection with the Flood Event (the "Insurance Proceeds").

30.     To date, Plaintiff has not been provided a detailed explanation of the allocation of the Insurance Proceeds or any additional funds received on account of the Flood Event that would offset expenses related to same.

### *The Building Closure Issue*

31.     Upon information and belief, on or about April 6, 2015, A1 Fire & Security, LLC d/b/a MIRCOM Engineered Systems ("A-1") removed the custom smoke alarm panel and wrongfully discarded it.

32.     On April 13, 2015, the Condominium was again shut down and closed in its

5

entirety by the City of Miami Beach Building Department as an Unsafe Building due to the
following reasons:

> *Fire alarm panel was removed* and new panel still not in service
> Corridor walls and unit demising wall have been removed on units
> from 5th to the 9th floor Interior demo of all units from 5 to 9,
> smoke control system not functioning, exhaust vents from baths
> not protected and no damper shown from floor to floor,
> penetrations between floor not properly fire stopped, water lines
> from floor to floor corroded.

(emphasis added).5

33.    The Condominium was not reopened until late December 2016.

34.    The Condominium was not operational from April 2015 through late December
2016 (the "Lock-Out Period").

35.    In 2015, the Plaintiff commenced a lawsuit styled *Sixty Sixty Condominium
Association, Inc. v. Condominium Hotel Management Corporation, Inc., Schecher Group, Inc.
and A1 Fire & Security LLC,* Case No. 2015-019981 CA 01 before the 11th judicial Circuit in and
for Miami-Dade County, Florida (the "2015 Lawsuit").

36.    Among other things, the Plaintiff asserted claims against A-1 in the 2015 Lawsuit
for negligence.

37.    As part of a mediated settlement agreement between Plaintiff, Schecher and
CHMC, the 2015 Lawsuit was dismissed and Schecher and CHMC agreed to prosecute the claim
against A-1.

38.    On November 20, 2016, Schecher and Casablanca Rental Services, Inc.
("Casablanca") filed a lawsuit against A-1 styled *Schecher Group, Inc. and Casablanca Rental
Services, Inc., v. A1 Fire & Security LLC,* Case No. 2016-029937 CA 01 before the 11th judicial
Circuit in and for Miami-Dade County, Florida  ("A-1 Lawsuit").

---

5 City of Miami Case Description, Case No. BV15000767.

39.     The Plaintiff was not asked to join the lawsuit as a party plaintiff and the A-1 Lawsuit does not purport to seek damages that would benefit Plaintiff.

40.     The A-1 Lawsuit asserts claims of Schecher and Casablanca Rental Services, Inc. ("Casablanca") against A-1 for, among other things, negligence, conversion, trespass to chattels, breach of contract, slander of title, and to quite title.6

41.     Schecher's A-1 Lawsuit alleges that A-1 caused damages to Schecher in the form of, among other things, "costs necessary to purchase and install a new smoke control panel" (the "A-1 Damages"). A-1 Lawsuit, Complaint ¶41.

42.     However, Schecher passed on 100% of the costs and expenses constituting the A-1 Damages to RUOs and CUOs, including Plaintiff.

### *Schecher's Failure to Pay Plaintiff's Assessments/ Setoff*

43.     The Declaration empowers the Plaintiff to assess and specially assess the RUOs, the CUO, and the HU for the costs of Common Expenses7 (the "Association Assessments"). Declaration §2.13.

44.     The Association Assessments are allocated across all unit owners pursuant to **Exhibit 3** of the Declaration (the "Common Expense Allocation").

45.     Under the Declaration, the Association holds a lien against all units for unpaid

---

6 Ironically, A-1 filed a proof of claim against the Plaintiff in the Main case asserting a secured claim in the amount of $57,001.87 ("POC #7"). MC Claim #7.
7 All capitalized terms not otherwise defined herein shall have the same meaning as ascribed to them in the Declaration.

7

Common Expenses dating back to the date of the Declaration.

46.     Under the Common Expense Allocation, Schecher is responsible for paying at least 64.5962%, of the Common Expenses.

47.     On December 12, 2016, Plaintiff sought court approval of the engagement of Alessandra Stivelman and Eisinger, Brown, Lewis Frankely & Chait, P.A. ("Eisinger Law") to, among other things, represent Plaintiff in the collection of outstanding receivables ("Eisinger Employment Application"). MC ECF#10.

48.     On December 20, 2016, Schecher objected to the Eisinger Employment Application. MC ECF#30.

49.     On January 5, 2017, Plaintiff filed its supplement to the Eisinger Employment Application. MC ECF#53.

50.     On January 9, 2017, Plaintiff filed its application to employ Michael Marcusky and Juda Eskew & Associates, PA ("JEA") in order to, among other things, assist the Plaintiff in collections of receivables including outstanding receivables (the "JEA Employment Application").

51.     On January 12, 2017, the Bankruptcy Court held a hearing on the Eisinger Employment Application and JEA Employment Application.

52.     On January 23, 2017, the Bankruptcy Court authorized the retention of Eisinger Law and JEA over Schecher's objections. MC ECF ##88 and 89.

53.     As of March 1, 2017, based on the records available to the Plaintiff, Schecher owes the Plaintiff approximately $889,921.29 in unpaid Association Assessments (the "$889k Obligation").

54.     On March 10, 2017, Eisinger Law sent its *Notice of Intent to Record a Claim of*

*Lien* to Schecher on behalf of Plaintiff providing notice and disclosing the amount of the outstanding debt owed by Schecher to Plaintiff in the amount of $889,921.29 due through March 1, 2017 (the "Demand Letter").

55.    To date, Schecher has failed and refused to pay the $889k Obligation or any part thereof.

56.    On April 3, 2017, counsel for Schecher responded to the Demand Letter, disputing the amount of the $889k Obligation and demanding written verification of the debt (the "Schecher Response").

57.    The Schecher Response also states, "the Association also owes hotel unit fees for assessments, late fees, and interest which it has not paid and for which you apparently have not credited to the transaction detail you provided" (the "Offset Claim"). The Offset Claim of the Schecher Response implicates the automatic stay under Section 362(a)(7) and the prohibitions against certain setoffs in Section 553 of the Bankruptcy Code.

58.    Eisinger Law and Plaintiff are taking all appropriate legal actions to prepare a reply to the Schecher Response.

### *Objection to Schecher's Proof of Claim #40*

59.    On or about April 11, 2017, Schecher filed a Proof of Claim in the Main Case ("POC 40"), asserting a claim in the sum of $1,075,516 (the "Claim Amount"), and further asserting that such claim is secured by liens against real property belonging to Plaintiff; the Commercial Units and Unit 505.

60.    Attached as Exhibit "B" to POC 40 appears to be a summary purporting to reflect the allocation of Schecher's total Claim Amount as against each Commercial Unit and Unit 505 (the "Summary Chart").

9

61.     The Summary Chart purports to be based on "Unit Ledgers".

62.     The "Unit Ledgers" themselves are not attached to POC 40.

63.     Other than the Summary Chart created by Schecher, POC 40 includes no documents purporting to support the calculation of the Claim Amount.

64.     Attached as Exhibit "A" to POC 40 is Schecher's *Statement of Claim* (the "Statement of Claim").

65.     The Statement of Claim asserts that Schecher owns the Shared Components (as defined in the Declaration). Statement of Claim at ¶4.

66.     The Statement of Claim asserts that as owner of the HU, Schecher is vested with certain rights under Sections 12.1, 12.3 and 12.4 of the Declaration. Statement of Claim at ¶7.

67.     The Declaration provides, among other things, that Schecher may impose charges against RUOs and the CUOs ("HU Assessments") for "the costs incurred by the Hotel Unit Owner in … the repair, replacement, improvement, maintenance, management, operation ad valorem tax obligations and insurance of the Shared Components … and any assessments payable by the Hotel Unit Owner to the Association" (the "Scope of HU Assessments"). Declaration §12.1.

68.     The Scope of HU Assessments does not include a profit component for Schecher.

69.     Schecher is not authorized to issue HU Assessments against RUOs or CUOs for any costs incurred by Schecher outside of the Scope of the HU Assessments.

70.     Schecher is not authorized to issue HU Assessments against RUOs or CUOs for any costs that would conceivably fall within the Scope of the HU Assessments but were not actually incurred by Schecher.8

---

8 As opposed to costs that were incurred by the Association for which Schecher is not liable.

71.     In sum, the Declaration provides that Schecher can only charge HU Assessments for costs actually incurred and that are properly within the Scope of HU Assessments.

72.     The Declaration further provides that such appropriate HU Assessments are chargeable against RUOs and the CUO pursuant to an allocation of such expenses pursuant to Exhibit 7 of the Declaration.

73.     Accordingly the total costs actually incurred by Schecher and properly within the Scope of HU Assessments constitutes the baseline of all HU Assessment against all RUOs and CUOs (the "Baseline").

74.     Once determined, the Baseline would provide a starting point to determine the appropriate HU Assessment against each and every RUO and CUO.

75.     To determine any individual RUO or CUO's obligations for HU Assessments, the Declaration provides that the Baseline figure be multiplied by the allocation percentage attributable to the particular unit in Exhibit 7 of the Declaration (the "Allocable Share").

76.     Then, any payments (or other credits) made to Schecher by the RUO or CUO would be subtracted from the Allocable Share to determine the particular RUO or CUO's outstanding HU Assessment due.

77.     The Declaration provides that Schecher's right to impose the HU Assessments is in consideration for the easements provided under Sections 3.4(e) and 7.3 of the Declaration (the "Easement") and Schecher's agreement to repair replace, improve, maintain, manage, operate and insure the HU (the "HU Obligations"). Statement of Claim ¶12(4)(C); Declaration §§ 3.4(e); 7.3; 12.1.

78.     The Easement provided in Section 3.4(e) of the Declaration includes:

Ingress and Egress. A non-exclusive easement in favor of each Unit Owner and resident, their guests and invitees, for each member of the Association (and its

11

and their guests, tenants and invitees) shall exist for (i) pedestrian traffic over, through and across such portions of the Hotel Unit as are designated by the Hotel Unit Owner and intended to provide direct pedestrian access to and from the applicable Residential Unit and/or Commercial Unit and the public right-of-way adjacent to the Condominium Property, and (ii) use and enjoyment of the Shared Components, subject to regulation as may be established from time to time by the Hotel Unit Owner and subject to the other provisions of this Declaration, specifically Section 3.3 above. **Notwithstanding the foregoing, the aforesaid easement over the Hotel Unit is limited and solely for use of the named beneficiaries' obtaining access to and from their Unit and shall not be used for the provision of any services, including, without limitation, any hotel related services including, but not limited to, solicitation and/or provision of housekeeping, personal services (i.e., massage, personal training, dry cleaning, etc.) and/or food and beverage service, it being understood and agreed by all Unit Owners that any such services may only be provided by the Owner{s) of the Hotel Unit.** The provisions of this section 3.4(e) may not be amended without an affirmative vote of not less than 4/5ths of all voting interests of all Unit Owners.

Declaration §3.4(e) (emphasis in original).

79.    "In consideration of the reservation and grant of easement over the Hotel Unit, as provided in Section 3.4(e) above, each Residential Unit Owner and each Commercial Unit Owner shall be obligated for payment of the expenses incurred by the Hotel Unit Owner(s) in connection with such maintenance, repair, replacement, improvement, management, operation, and insurance, all as more particularly provided in Section 12 below." Declaration §7.3.

80.    Of the HU Assessments, a certain portion is for those "assessments payable by the Hotel Unit Owner to the Association" (the "Association's Portion"). Declaration §12.1.

81.    Of any monies collected from RUOs and CUOs on account of HU Assessments, a portion of said payments are the Association's Portion.

82.    To date, Schecher withheld substantially all of the Association's Portion of the payments received from RUOs and CUOs from Plaintiff.

83.    Additionally, upon information and belief, an affiliate of Schecher has acquired four Residential Units.9

12

84.     To date, Schecher or Schecher's affiliated owner of the Residential Units has failed and refused to pay the Association Assessments for said units.

### *Specific Nonexclusive Challenges to the Validity of the Amount of Schecher's POC 40*

85.     In violation of the Declaration, Schecher charged HU Assessments to RUOs and CUOs, including the Plaintiff, that include costs incurred by Schecher that are outside the Scope of HU Assessments.

86.     In violation of the Declaration, Schecher charged HU Assessments to RUOs and CUOs, including the Plaintiff, that include costs that were not incurred by Schecher.

87.     Among other things, Schecher has charged HU Assessments to RUOs and CUOs, including Plaintiff, in the approximate amount of $203,023 for certain legal fees and costs associated with the 2015 Lawsuit that are not within the Scope of HU Assessments.

88.     Among other things, Schecher charged HU Assessments to RUOs and CUOs, including Plaintiff, in the approximate amount of $160,195 for other legal fees and costs that are not within the Scope of HU Assessments.

89.     Among other things, Schecher charged HU Assessments to RUOs and CUOs, including Plaintiff, hundreds-of-thousands of dollars for the costs of goods and services provided by Florida Building and Supply, Inc. ("FB&S") that, according to FB&S, were not incurred by Schecher (the "FB&S Expenses").

90.     On March 31, 2017, FB&S filed Proof of Claim #6 asserting a secured claim against Plaintiff in the amount of $1,032,413 and secured by the Commercial Units and Unit 505 for payment of the FB&S Expenses. MC POC #6.

---

9 *See* MC ECF#218 at p. 24. (the "Schecher Group takes the position that the Hotel Unit, along with the ownership of four (4) additional Residential Units through an affiliate…").

91.     Among other things, Schecher charged HU Assessments to RUOs and CUOs, including Plaintiff, significant sums to remove the individual locks to the doors of the RUOs' Residential Units and replaced same without permission or authority and without providing a key to said RUOs.

92.     Among other things, Schecher charged HU Assessments to RUOs and CUOs, including Plaintiff, in the amount of hundreds-of-thousands of dollars for unsubstantiated services purportedly provided by affiliates including, among others, Casablanca and CHMC.

93.     Schecher's Vendor Report10 includes charges from Casablanca and CHMC for which no Supporting Invoice11 was produced.

94.     RJS is the CEO of Casablanca.

95.     Among other things, Schecher charged HU Assessments to RUOs and CUOs, including Plaintiff, in the amount of tens-of-thousands of dollars for services purportedly provided for the management and operations of the Condominium while it was closed during the Lock-Out Period.

96.     For example, during the Lock-Out Period the Vendor Report reflects that Casablanca was paid, among other payments, $21,915.56 on November 1, 2015; $17,190.9912 on April 7, 2016; $15,524 on July 6, 2016; $17,73213 on July 13, 2016; and CHMC was paid,

10 Schecher's report of charges by vendor produced pursuant to the Bankruptcy Court's *Order Granting Extension of Time and Setting Production Deadlines* (MC ECF #72) (the "Discovery Order") purports to reflect all charges incurred by Schecher related to the Condominium from all vendors from May 22, 2013 through January 12, 2017 (the "Vendor Report").

11 On February 9, 2017, Schecher filed its *Schecher Group Inc.'s Second Notice of Compliance with Order [D.E. 72]* claiming that incompliance with the Discovery Order, "Schecher Group has already notified Debtor's counsel that all invoices in possession of Schecher Group are available for inspection and copying at the Schecher Group Office at the 6060. Alternatively, Debtor may have the invoices picked up by a reputable copy service for copying and return same to Schecher Group office at the 6060." Ultimately, a reputable copy service picked up all of the invoices made available by Schecher (the "Supporting Invoices" and each, a "Supporting Invoice") and made copies of same.

12 Listed as being for "Insurance Coverage".

14

among other payments, approximately $8,000 on June 10, 2015; $2,009 on June 10, 2015; approximately $8,000 on September 1, 2015; approximately $8,000 on September 10, 2015; the list goes on.

97.    During the Lock-Out Period, the Easements were not provided to the RUOs or the CUO, including the Plaintiff.

98.    Among other things, Schecher charged HU Assessments to RUOs and CUOs, including Plaintiff, in the amount of approximately $213,815 for services that Schecher alleges were negligently provided by A-1, which services caused considerable damages to Schecher, Casablanca, the Plaintiff and the RUOs and CUO, and which acts form the basis of the A-1 Lawsuit.

99.    Among other things, potentially in violation of the automatic stay under 11 U.S.C. 362, POC 40 contains amounts for interest and other charges that were only assessed post-petition ("Interest Charges").

100.    Upon information and belief, Schecher did not actually impose Interest Charges against the Plaintiff pre-petition.

101.    Schecher's POC 40 appears to include amounts that Schecher could theoretically have assessed as of the Petition Date, rather than the amount that Schecher actually assessed and was due on the Petition Date.

102.    Schecher is prohibited from recalculating Interest Charges that, in theory, may have been charged prepetition, but, in actuality, were only charged after the Petition Date.

103.    Schecher also impermissibly passed on interest charges at 18% on account of a loan from an affiliated entity, APO Annuity Manager, LLC ("APO").

104.    RJS is the Manager/Director of APO.

---

13 Listed as being for real estate taxes, but no Supporting Invoice from Casablanca evidences the bill.

## Challenges to the Validity and Priority of the Schecher Liens

### Challenges to Schecher's Lien against Unit 505

105.    Schecher's *Claim of Lien for Assessments* as to Unit 505 was filed seven days before the Petition Date, on November 28, 2016 (the "505 Lien").

106.    The 505 Lien purports to perfect an antecedent debt owed by the Plaintiff to Schecher.

107.    During the 90 day period immediately preceding the Petition Date, the Debtor was insolvent.

108.    The 505 Lien would entitle Schecher to receive more than Schecher would receive in a case under chapter 7, had the transfer not been made, and Schecher received payment of such debt to the extent provided under Chapter 7 of the Bankruptcy Code.

109.    Moreover, Schecher failed to provide Plaintiff the requisite notice of intent to record a lien pursuant to Florida Statute Section 718.112 and Fair Debt Collection Practices Act. *See* 15 U.S.C. *§§* 1692 *et seq.*

### Challenges to Schecher's Liens against the Commercial Units

110.    On April 21, 2016, Schecher sent to Plaintiff certain letters titled *Notice of Intent to Record a Claim of Lien* (the "4/21/2016 Letters") against the Plaintiff's Commercial Units (the "Purported Commercial Liens").

111.    The 4/21/2016 Letters fail as legally enforceable notice to claim a lien as they are not in substantially the same form as required by Florida Statute Section 718.112.

112.    Accordingly, the Purported Commercial Liens relying on the 4/21/2016 Letters are ineffective because they too are in violation of Chapter 718, Florida Statutes.

113.    On May 13, 2016, the Plaintiff responded to the 4/21/2016 Letters in writing (the "Dispute Letter") disputing the validity of the debts claimed therein and demanded supporting documentation, including proof of the alleged debt, pursuant to 15 U.S.C.A. Section 1692g of the Federal Fair Debt Collection Practices Act ("FDCPA").

114.    Schecher did not respond to the Dispute Letter and did not provide verification of the debt, in violation of the FDCPA.

115.    Instead, on June 3, 2016, Schecher continued with his collection efforts by filing a *Claim of Lien* against each of Plaintiff's Commercial Units (the "Ineffective Liens"). *See* POC 40.

116.    The Claims of Lien recorded are deficient in that they do not meet the requirements of Florida Statute Section 718.116(5)(b) by among other things, failing to include the due dates (the beginning and ending dates from which the purportedly unpaid assessments accrued).

117.    Then, on August 29, 2016 Schecher sent to Plaintiff certain letters titled *Notice of Intent to Foreclose and Service of Lien* (the "8/29/2016 Letters") for each Commercial Unit.

118.    The 8/29/2016 Letters fail to comply with the requirements of Florida Statute Section 718.116(6) by, among other things, failing to use the proscribed form of 'Delinquent Assessment' notice.

119.    Moreover, the 8/29/2016 Letters did not attach the corresponding Ineffective Liens.

120.    Accordingly, the liens filed by Schecher are in violation of Chapter 718, Florida Statutes, and the Fair Debt Collection Practices Act. *See* 15 U.S.C. *§§* 1692 *et seq.*

121.    All conditions precedent to the filing of the instant lawsuit have been performed, satisfied, excused or waived.

## COUNT 1: FOR DECLARATORY RELIEF TO DETERMINE THE VALIDITY EXTENT AND PRIORITY OF LIENS, CLAIMS AND ENCUMBRANCES IN PLAINTIFF'S REAL PROPERTY

122.    Interested unit Owners incorporates and realleges the allegations contained in Paragraphs 1 through 121 above as if fully set forth herein.

123.    This is an action for equitable and declaratory relief brought pursuant to 7001(2), Fed. R. Civ. P. and 11 U.S.C. §363(p)(2) to determine the validity, extent, and priority of liens, claims, encumbrances, and interests in the Commercial Units and Unit 505 including anyone laying claim to the estate's rights and interests in such properties.

124.    This Court should determine whether and to what extent Schecher has proven the validity, priority or extent of its respective liens, claims, encumbrances, and interests, including disputed ownership interests, pursuant to 11 U.S.C. §363(p)(2) in order to determine the amount of the distribution they are entitled to receive from the net proceeds from the sale of the Commercial Units and Unit 505, if any, after costs and expenses of such sale, including all administrative expenses incurred in the sale.

**WHEREFORE**, Interested unit owners requests this Court enter a declaratory judgment that determines the validity, extent, priority, and amount of Schecher's claims, liens and interest in the Commercial Units and Unit 505 and against Plaintiff, awarding Plaintiff its attorneys fees and costs expended to prosecute this adversary proceeding, and granting such other, further and different relief as the Court deems just and proper.

## COUNT 2: OBJECTION TO CLAIM

18

125.    Interested Unit owners incorporates and realleges the allegations contained in Paragraphs 1 through 121 above as if fully set forth herein.

126.    This is an objection to claim pursuant to Pursuant to 11 U.S.C. §502 and Bankruptcy Rule 3007.

127.    In addition to the infirmities incorporated and realleged herein, POC 40 does not comply with Rule 3001 as it fails to provide sufficient documentation to support the alleged amount of the claim.

128.    POC 40 also appears to be duplicative of, among other claims, the POC #6 asserted by FB&S, POC #7 filed by A-1, and proof of claim #1 filed by Taw Power Systems, Inc.

129.    Finally, POC 40 fails to take into consideration the impact of the $889k Obligation.

Wherefore, Interested Unit Owners respectfully requests an Order denying Schecher's POC #40 in the amount over which Schecher ought to be entitled to an allowed claim against Plaintiff, awarding Plaintiff its attorneys fees and costs expended to prosecute this adversary proceeding, and for such further relief as this Court deems just and proper.

## COUNT 3: IMPROPER SETOFF

130.    Interested Unit Owners incorporates and realleges the allegations contained in Paragraphs 1 through 121 above as if fully set forth herein.

131.    This is an objection to certain setoffs applied by Schecher in its POC 40.

132.    According to POC 40, it appears that Schecher setoff approximately $399,278.34 in claims held by Plaintiff against Schecher.14

---

133.    Upon information and belief, such setoffs were made either within the 90 days prior to the Petition Date in violation of Section 547 or post-petition in violation of Sections 362, 553 and 549 of the Bankruptcy Code.

134.    During the 90 day period preceding the Petition Date Plaintiff was insolvent.

135.    Upon information and belief, on account of such setoff, the amount of the insufficiency is less than the amount of the insufficiency either 90 days prior to the Petition Date or at some time during the 90-day period.

Wherefore, Interested Unit Owners respectfully requests an Order denying the setoff to the extent that it was either post-petition or effected during the 90 day period preceding the Petition Date and reduced the insufficiency, awarding Plaintiff its attorneys fees and costs expended to prosecute this adversary proceeding, and for such further relief as this Court deems just and proper.

### COUNT 4: TO AVOID PREFERENTIAL LIEN AGAINST UNIT 505

136.    Interested Unit Owners incorporates and realleges the allegations contained in Paragraphs 1 through 121 above as if fully set forth herein.

137.    This is an action to avoid a lien purportedly perfected during the 90 day preference period immediately preceding the Petition Date pursuant to Section 547 of the Bankruptcy Code.

138.    The 505 Lien is a lien purportedly secured by Plaintiff's Unit 505.

139.    The 505 Lien was recorded during the 90 day period immediately preceding the Petition Date.

---

14 Schecher's Summary Chart reflects "Credits" in the total amount of $399,278.34. It is unclear whether such "Credits" reflect setoffs, payments, or other reductions to the "Charges" imposed by Schecher against Plaintiff. POC 40 provides no other information as to the "Credits" identified in the Summary Chart.

140.    The 505 Lien purports to perfect an antecedent debt owed by Plaintiff to Schecher, a creditor.

141.    During the 90 day period immediately preceding the Petition Date, the Debtor was insolvent.

142.    The 505 Lien would entitle Schecher to receive more than Schecher would receive in a case under chapter 7, had the transfer not been made, and Schecher received payment of such debt to the extent provided under Chapter 7 of the Bankruptcy Code.

Wherefore, Interested Unit Owners respectfully requests an Order setting aside the 505 Lien, awarding Plaintiff its attorneys fees and costs expended to prosecute this adversary proceeding, and for such further relief as this Court deems just and proper.

## COUNT 5: TO AVOID IMPROPERLY PERFECTED LIENS
## AGAINST COMMERCIAL UNITS AND UNIT 505

143.    Interested Unit Owners incorporates and realleges the allegations contained in Paragraphs 1 through 121 above as if fully set forth herein.

144.    This is an action to avoid the improperly perfected liens of Schecher pursuant to Section 544 of the Bankruptcy Code.

145.    In a Chapter 11 case such as the instant case, the Plaintiff (the debtor-in-possession) has the power of avoidance of a hypothetical lien creditor and bone fide purchaser as of the Petition Date. *See* 11 U.S.C. §§ 544 and 1107.

146.    As stated in more detail herein, as of the Petition Date Schecher failed to properly perfect the 505 Lien and the Purported Commercial Liens.

147.    Accordingly, the 505 Lien and Purported Commercial Liens ought to be avoided.

Wherefore, Debtor respectfully requests an Order avoiding the 505 Lien and Purported Commercial Liens pursuant to 11 U.S.C. 544, awarding Plaintiff its attorneys fees and costs

21

expended to prosecute this adversary proceeding, and for such further relief as this Court deems just and proper.

Dated: 7/13/2017.

## CERTIFICATE OF MAILING

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by first-class, U.S. mail or via the CM/ECF system of the United States Bankruptcy Court to the parties on the attached matrix, this 13th day of July, 2017.

Respectfully submitted,

**Florida Litigation Group P.A.**
4839 Volunteer Road, #514
Davie, FL 33330
Telephone: (954) 394-7461
*Counsel for the Unit Owners*
By: /s/ Inger Garcia Esq.
            Inger Garcia, Esq.
Florida Bar Number: 0106917
ServiceEmail: Attorney@ingergarcia.com
And Attorney@FloridaLitGroup.com

22